### 52859. ROLLINS COMMUNICATIONS, INC. v. GEORGIA INSTITUTE OF REAL ESTATE, INC.

WEBB, Judge.

Rollins Communications, Inc., a division of Rollins International, Inc., as lessor, brought suit against Georgia Institute of Real Estate, Inc., the lessee, for unpaid rentals under an "Equipment Lease Agreement." At trial defendant lessee moved for a directed verdict on the ground that the term of the lease never commenced since it was to be measured from a defined "Date in Service," written notice of which was required to be, but was not, given by lessor to lessee. The trial court directed a verdict on this ground and on the additional ground, raised sua sponte, that the lease was not a true lease but was intended as a security agreement so that the suit, construed as one for a "deficiency judgment," could not proceed in the absence of compliance with Code Ann. § 109A-9—504 (3). We reverse as to both issues.

1. The record demands a finding that the installation was not completed, and the "Date in Service" never arrived at, since lessor's employee, who was finishing up the installation, was told by lessee to stop work because lessee had determined not to honor the contract. Under everyman's definition of anticipatory breach, further performance by lessor was not required and it was entitled to sue at once for its damages. *Whitley Const. Co. v. Virginia Supply &c. Co.,* 99 Ga. App. 419 (108 SE2d 819) and cases cited; *Jinright v. Russell,* 123 Ga. App. 706, 708 (2) (182 SE2d 328) and cits.

2. Paragraph 8 of the agreement provides: "Acceptance of this Agreement by Rollins is conditioned upon . . . (4) evidence of the filing of Form UCC-1." Paragraph 13 provides: "Lessee shall execute and deliver to Rollins duly executed financing statements and security agreements to secure the then unpaid portion of the lease rentals as set forth in Schedule 'A'; provided, however, that failure of Rollins to request such financing statement and security agreement or of the Lessee to execute the same shall not affect the reservation of title in Rollins." In paragraph 18, entitled "Default," provision is made for the contingency of lessee becoming "insolvent (as defined under the Uniform Commercial Code) . . ."

Because of this language the trial court ruled that the lease was not a true lease but was intended as a security agreement so that failure to comply with Code Ann. § 109A-9—504 (3) (secured party's disposition of collateral after default) was a bar to the suit. *Braswell v. American Nat. Bank,* 117 Ga. App. 699 (161 SE2d 420) (1968); *Edmondson v. Air Service Co.,* 123 Ga. App. 263 (180 SE2d 589) (1971); *Gurwitch v. Luxurest Furniture Mfg. Co.,* 233 Ga. 934 (214 SE2d 373) (1975).

UCC Article 9, Secured Transactions, applies to a "lease . . . intended as security." Code Ann. § 109A-9—102 (2). "Unless a lease . . . is intended as security, reservation of title thereunder is not a 'security interest' . . . Whether a lease is intended as security is to be determined by the facts of each case; however, (a) the inclusion of an option to purchase does not of itself make the lease one intended for security, and (b) an agreement that upon compliance with the terms of the lease, the lessee shall become or has the

option to become the owner of the property for no additional consideration or for a nominal consideration does make the lease one intended for security." Code Ann. § 109A-1—201 (37).

In the instant case the lessee had the option of becoming the owner of the leased equipment for additional consideration which was more than nominal, but it was not required to do so, nor was it "locked into a contract to purchase [the equipment] whenever [lessor] desired" as was the case in *Redfern Meats v. Hertz Corp.,* 134 Ga. App. 381, 392 (215 SE2d 10) (1975). It is sufficient to say that, under Code Ann. § 109A-1—201(37), supra, and prior decisions of this court (*Mays v. C. & S. Nat. Bank,* 132 Ga. App. 602, 609 (208 SE2d 614) (1974); *McGuire v. Associates Capital Serv. Corp.,* 133 Ga. App. 408, 410 (3) (210 SE2d 862) (1974); *Redfern Meats v. Hertz Corp.,* 134 Ga. App. 381, 385 (4), supra), the instant lease is not a security interest unless lease paragraphs 8, 13, and 18, referring to financing statements and the UCC as quoted above, require that construction in and of themselves.

We hold that they do not. In *Hays v. Jordan,* 85 Ga. 741, 748 (11 SE 833) (1889), the Supreme Court, in holding that a contract calling for the payment of "rent" was not a lease but a conditional sale, quoted the familiar rule: " 'In determining the real character of a contract, courts will always look to its purpose, rather than to the name given it by the parties.' "

And the principle works in reverse. In *McGuire v. Associates Capital Serv. Corp.,* 133 Ga. App. 408, supra, the lessor proceeded on the assumption that the lease was a security instrument requiring it to proceed to dispose of the collateral in accordance with Article 9 of the UCC. It was sold, the proceeds credited, and a deficiency balance sought. The lessee defended on the ground that there were irregularities in the dispositional proceedings, but this court held that the lease did not amount to the creation of a security interest regardless of what the parties thought.

Commercial necessity demands that we adhere to these cases. In *Mays v. C. & S. Nat. Bank,* 132 Ga. App. 602, 609, supra, we noted that while this court would not do so, courts of other states apply the warranty provisions

of Article 2 to leases and other similar contracts. In *Redfern Meats v. Hertz Corp.*, 134 Ga. App. 381, 390, supra, we noted, but rejected, the approach of courts of some states which apply the UCC to all commercial chattel leases. The point to note is that a company doing business in more than one state, such as the Delaware corporation in the instant case, may have its rights declared by a court which subjects leases to the UCC; and the consequence of a lease being thus considered a secured transaction is that the lessor should file under Article 9. "If he fails to do so, he may lose the leased equipment to the lessee's creditors, receiver, or trustee in bankruptcy." 68 AmJur2d 962, Secured Transactions, § 120.

It is our view that the lessor, faced with such uncertainty, should be permitted to make provisions for precautionary filing without the risk that such provisions would in and of themselves, as urged in the instant appeal, convert the lease into a secured transaction. The review committee for Article 9 proposes in a new § 9-408 that filing is not itself a factor in determining whether a lease is intended as security. 68 AmJur2d 963, Secured Transactions, § 120, n. 49 and accompanying text. We so hold now.

*Judgment reversed. Deen, P. J., and Smith, J., concur.*

Argued October 4, 1976 — Decided November 1, 1976 — Rehearing denied November 16, 1976 — ▮▮▮▮▮▮▮

*Levy, Buffington & Adams, D. Merrill Adams,* for appellant.

*J. Don Jones,* for appellee.